**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Van WELLS, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 2, 2006.
Filed Jan. 31, 2007.

Douglas P. Earl, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: BOWES, McCAFFERY, and COLVILLE *, JJ.

* Retired Senior Judge Assigned to the Superior Court.

OPINION BY McCAFFERY, J.:

¶ 1 Appellant, Van Wells, appeals from his judgment of sentence for possession of cocaine with intent to deliver and firearms violations. Specifically, Appellant argues that the police did not have probable cause to arrest under circumstances where the officer observed only one street transaction involving an exchange of currency for an unidentified object. However, Appellant has misinterpreted the standard by which we evaluate probable cause and fails to recognize that we must consider the totality of the circumstances as viewed through the eyes of a trained police officer. Applying this standard and taking into account not only the street transaction but also Appellant's flight from the scene and the numerous complaints from the neighborhood of drug trafficking, we conclude the police did have probable cause to arrest. Hence, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows. On the evening of May 28, 2003, police officer Claudia McDonald was engaged in a surveillance operation in a neighborhood from which police had received numerous complaints of illegal drug sales. Only a few minutes after initiating her surveillance, Officer McDonald observed a woman, later identified as Constance Roberts, approach Appellant as he stood on a street corner with several other men. As Officer McDonald continued to watch, Ms. Roberts said something to Appellant and then handed him money; Appellant in turn handed her a small object that he had retrieved from the pocket of his jeans. Ms. Roberts walked away with her purchase in her hand and was stopped approximately one block away by two backup police officers whom Officer McDonald had alerted.

¶ 3 As Officer McDonald continued to observe Appellant on the street corner, an unidentified male approached Appellant and said something to him. Appellant then looked toward Officer McDonald and started walking away from her, repeatedly looking over his shoulder in the officer's direction. Officer McDonald' radioed her fellow officers to stop Appellant. As the officers approached Appellant and identified themselves, Appellant dropped his jacket and bookbag from his shoulders and started to run from the officers. The officers caught up with Appellant within a block or so and arrested him.

¶ 4 When the officers searched Appellant subsequent to his arrest, they found a clear plastic bag containing approximately six grams of crack cocaine in his pants pocket, and one pink-tinted packet of crack cocaine in the watch pocket of his pants. In Appellant's abandoned bookbag, the officers found a loaded .357 revolver and a clear plastic bag containing numerous empty pink-tinted packets.[1]

¶ 5 Appellant filed a pre-trial motion to suppress all physical evidence found on his person and in his bookbag, contending that his arrest was not supported by probable cause. Following a hearing on November 10, 2003, before the Honorable Glynnis D. Hill, the motion was denied.

¶ 6 On January 13, 2004, Appellant proceeded to a bench trial before the Honorable George W. Overton, who found Appellant guilty of possession of a controlled substance with intent to deliver and three violations of the Uniform Firearms Act.[2] Appellant was sentenced on March 2, 2004,

to an aggregate term of imprisonment of not less than three nor more than six years, to be followed by one year of probation. Subsequently, the court granted Appellant's post-sentence motion to modify his sentence to include boot camp eligibility. No direct appeal was taken.

¶ 7 Appellant then filed a petition pursuant to the Post Conviction Relief Act, seeking reinstatement of his direct appeal rights *nunc pro tunc* due to trial counsel's failure to file a direct appeal. The Commonwealth did not contest this requested relief, and the court granted Appellant's petition. Appellant has now filed an appeal to this Court, raising one question for our review:

1. Was there probable cause to stop and search Appellant Van C. Wells?

(Appellant's Brief at 3).

¶ 8 The role of this Court in reviewing the denial of a suppression motion is well-established:

An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound

1. Police officers also searched Ms. Roberts subsequent to her arrest and recovered an identical pink-tinted plastic packet containing crack cocaine.

2. Possession with intent to deliver a controlled substance, 35 P.S. § 780–113(a)(30); persons not to possess, use, manufacture, con-

trol, sell or transfer firearms, 18 Pa.C.S.A. § 6105; firearms not to be carried without a license, 18 Pa.C.S.A. § 6106; carrying firearms on public streets or public property in Philadelphia, 18 Pa.C.S.A. § 6108. The text of the Uniform Firearms Act is found at 18 Pa.C.S.A. §§ 6101–62.

by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Stevenson,* 894 A.2d 759, 769 (Pa.Super.2006) (citation omitted). Although we are bound by the factual and the credibility determinations of the trial court which have support in the record, we review any legal conclusions *de novo. Commonwealth v. George,* 878 A.2d 881, 883 (Pa.Super.2005), *appeal denied,* 586 Pa. 735, 891 A.2d 730 (2005).

 ¶ 9 To be lawful, an arrest must be supported by probable cause to believe that a crime has been committed by the person who is to be arrested. *Commonwealth v. Holton,* 906 A.2d 1246, 1249 (Pa.Super.2006). A police officer must make a common sense decision whether there is a fair probability that a crime was committed by the suspect. *Id.* Whether probable cause exists is a highly fact-sensitive inquiry that must be based on the totality of the circumstances as viewed through the eyes of a prudent, reasonable, cautious police officer guided by experience and training. *Commonwealth v. Clark,* 558 Pa. 157, 164, 735 A.2d 1248, 1252 (1999); *Holton, supra* at 1249; *Commonwealth v. Nobalez,* 805 A.2d 598, 600 (Pa.Super.2002). "[P]robable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent [human beings] act." *Commonwealth v. Wright,* 867 A.2d 1265, 1268 (Pa.Super.2005), *appeal denied,* 583 Pa. 695, 879 A.2d 783 (2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 1047, 163 L.Ed.2d 879 (2006) (citation and internal quotation omitted).

 ¶ 10 Our case law is replete with decisions addressing probable cause for arrest in the context of drug trafficking on public streets. It is well-established that not every transaction involving unidentified property exchanged on a street corner gives rise to probable cause for arrest. *Commonwealth v. Colon,* 777 A.2d 1097, 1102 (Pa.Super.2001). However, when certain other factors are present, police officers may be justified in concluding that the transaction is drug-related, and hence that probable cause for arrest exists. *Id.* (citing *Commonwealth v. Lawson,* 454 Pa. 23, 28–29, 309 A.2d 391, 394 (1973)). It is important to view *all* of the facts and the totality of the circumstances in order to avoid rendering a decision that is "totally devoid of [the] commonsensical inferences [that are] drawn by trained police officers with regard to drug activity." *Id.* (citation omitted).

¶ 11 For example, in *Nobalez,* 805 A.2d at 598, an experienced officer, who was on routine patrol in a residential neighborhood known for its high level of drug trafficking, observed the following street transaction: an unknown male approached the appellant and handed him money, at which point the appellant reached into his jacket and then dropped an unknown object into the other man's hand. Believing that he had just witnessed a drug sale, the officer left his patrol car, approached the appellant, and stopped him, at which point the purchaser fled and was not apprehended. Upon searching the appellant, the officer discovered numerous small packets of cocaine. The appellant filed a motion to suppress evidence of the drugs based on lack of probable cause for arrest, which the trial court denied. In affirming the trial court's denial, this Court cited several factors: the extensive experience of the narcotics officer who observed the transaction; the justified reputation of the area in which the transaction took place as a site of a high level of drug trafficking; and the flight of the buyer. *Id.* at 600.

¶ 12 The *Nobalez* court cited *Commonwealth v. Stroud,* 699 A.2d 1305 (Pa.Super.1997) in support of its decision. In

*Stroud,* a highly experienced police officer was conducting nighttime surveillance of a street corner which had been the focus of neighborhood complaints because of drug-trafficking activity. The officer observed two transactions in which the defendant accepted cash from two other individuals in exchange for an object that he retrieved from his shoe. Between the two transactions, the officer also observed the defendant remove small objects from the trunk of a nearby automobile and place them in his shoe. Following these observations, the officer arrested the defendant and, in a search subsequent to arrest, discovered vials of illegal drugs on his person. The trial court granted the defendant's motion to suppress the drugs, based on lack of probable cause for arrest. However, this Court reversed, citing the totality of the facts and circumstances, in particular the extensive experience of the narcotics officer, who was engaged in binocular-aided surveillance of a street corner known both to the neighborhood and to the officer personally as a site of drug-dealing and drug arrests. *Id.* at 1309.

¶ 13 From the cases discussed above and others, several factors relevant to a determination of probable cause in the case *sub judice* can be identified. First, the professional experience of a police officer in interpreting the actions of those who traffic in controlled substances must be taken into account. *Nobalez,* 805 A.2d at 600 (citing the experience of a narcotics officer, which allowed him to interpret the way a drug trafficker was acting and to "know in a way a layperson could not that [the officer] was watching a drug sale"); *Stroud,* 699 A.2d at 1308–09 (stating that "a reviewing court will not ignore the ability of experienced police officers to draw deductions and inferences which other persons might not make") (citation omitted). Second, a police officer's knowledge of drug-trafficking activity in a particular neighborhood is highly relevant to a deter-

mination of probable cause. Such knowledge can derive from citizens' complaints of drug trafficking in their neighborhood or from the officer's personal involvement in the prior arrests of drug traffickers in the neighborhood. *Nobalez,* 805 A.2d at 600; *Colon,* 777 A.2d at 1101; *Stroud,* 699 A.2d at 1308–09; *Commonwealth v. Dennis,* 417 Pa.Super. 425, 612 A.2d 1014, 1016 (1992) (commenting that "[m]embers of a particular neighborhood are uniquely well-qualified to observe what is going on in their community, and should be supported in reporting drug activity to the police"). Third, the movements and manners of the parties to the transaction, *e.g.,* flight of one or more of the parties, are relevant to the determination of probable cause. *Commonwealth v. Lawson,* 454 Pa. 23, 28–29, 309 A.2d 391, 394 (1973); *Nobalez, supra* at 600. We stress that any factor relevant to a determination of probable cause must be considered, not in isolation, but in the context of its contribution to the totality of the circumstances. *Colon, supra* at 1102; *Dennis, supra* at 1016.

¶ 14 Turning to the case *sub judice,* we conclude that police did indeed have probable cause to arrest Appellant. Officer McDonald was conducting a surveillance operation when she observed the transaction between Ms. Roberts and Appellant taking place 20–25 feet from her position. Numerous complaints of drug trafficking, made by citizens in the neighborhood, had prompted the surveillance. The complaints had indicated that men were on the street corner, every day, all day, engaged in drug trafficking. Officer McDonald testified that she knew of these complaints and that she was in the neighborhood every day, such that most people in the area knew her by sight. Finally, Appellant ran from the scene, dropping his jacket and bookbag, as soon as a police officer identified himself. In light of our controlling case law and taking into account the totali-

ty of the circumstances, we agree with the trial court that police had probable cause to arrest Appellant.

¶ 15 In his argument to the contrary, Appellant relies on *Commonwealth v. Banks*, 540 Pa. 453, 658 A.2d 752 (1995), in which our Supreme Court reversed the denial of a motion to suppress cocaine. In *Banks*, the police officer happened to observe a transaction on a public street corner in which there was an exchange of currency for some unidentified item; the appellant then fled when the officer's patrol car came closer. *Id.* at 454–55, 658 A.2d at 752–53. The Court concluded that these facts, taken together, fell "narrowly short of establishing probable cause." *Id.* at 456, 658 A.2d at 753. However, the Court also distinguished Banks from other cases in which additional factors were present. Most relevantly to the case *sub judice*, the Court noted that *Banks* was **not** a case in which the officer was responding to a citizen's complaint. *Id.* at 455, 658 A.2d at 753.

¶ 16 Here, the police officer testified that she was conducting a surveillance operation in the area because of *numerous* complaints from neighborhood denizens about drug sales. Some of the complaints focused on groups of men standing on the street corner where the officer observed the transaction in question. The officer did not just happen upon an exchange of unknown items on a public street corner in the course of a routine patrol, as in *Banks*. Rather, the officer was responding to specific complaints regarding a neighborhood in which she worked routinely and hence knew well. Therefore, we cannot agree with Appellant that *Banks* should control the resolution of this case.

¶ 17 In sum, after careful review of all the circumstances surrounding this case and the controlling case law, we affirm Appellant's judgment of sentence.

¶ 18 Judgment of sentence affirmed.