J-S51020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERICH MORITZ | |
| Appellant | No. 1858 EDA 2015 |

Appeal from the Judgment of Sentence June 1, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013333-2013

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                      **FILED JULY 08, 2016**

Erich Moritz appeals from the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County following his conviction for drug-related offenses.  Upon careful review, we affirm.

The trial court set forth the factual and procedural history of the case as follows:

> On October 4, 2013, Officer James Wade was at the 2900 block of Cottman Avenue, Philadelphia, PA.  He and his fellow officers were conducting surveillance for illegal narcotics activity in the area in response to numerous complaints. While sitting in a parking lot of a 7-11, Moritz pulled up and parked a "car length" from where Officer Wade was parked.  Officer Wade overheard Moritz say into a cell phone, "How many do you want."  Moritz then drove out of the parking lot and proceeded eastbound on Cottman Avenue.  Officer Wade instructed backup officers to follow Moritz.  Based on his seventeen years of police training

---

[*] Retired Senior Judge assigned to the Superior Court.

and experience, Officer Wade believed that Moritz was involved in a narcotics transaction.

Officer Stephen Burgoon followed Moritz as he parked in an alley by the 3500 block of Englewood Street. Officer Burgoon parked approximately 50 feet away from Moritz. Although it was nighttime, Moritz's car was illuminated by the interior dome light. Officer Burgoon observed a male, later identified as Owen Burke, approach the passenger side of Moritz's car and hand Moritz U.S. currency. Moritz then handed a small object to Burke and drove away. Officer Burgoon followed as Moritz drove back to the 7-11. Based on Officer Burgoon's observations, and ten years of experience as a police office, Officer Burgoon believed that Moritz had engaged in a drug transaction with Burke, and was on his way to another transaction.

Meanwhile Officer Burgoon's partner, Officer Konstantinos Apostolou, stopped Burke. Officer Apostolou searched Burke and recovered a clear baggy with a white-chunky substance, alleged crack cocaine.

Based on information he received from Officers Wade and Burgoon, Sergeant Michael Cerruti stopped Moritz once Moritz pulled into the 7-11. Moritz was arrested, and Sergeant Cerruti searched Moritz's automobile and person. He recovered seven bags containing narcotics. Four bags contained cocaine and three bags contained crack cocaine. Additionally, Sergeant Cerruti recovered $2,167.00 and two cell phones.

This Court denied the motion to suppress, finding that the police had conducted a thorough investigation prior to the seizure and search of Moritz, which coupled with their years of experience and training, was sufficient to establish probable cause that Moritz was selling drugs.

Trial Court Opinion, 9/9/15, at 1-3.

Following a non-jury trial, Moritz was convicted of possession with intent to deliver/manufacture,[1] criminal use of a communication facility,[2] and

---

[1] 35 P.S. § 780-113(a)(30).

intentional possession of a controlled substance.[3]  He was sentenced to four years of probation plus drug and alcohol treatment.  This timely appeal followed, in which Moritz raises the following issue for our review:

> Did the trial court err when it denied the defense motion to suppress physical evidence as the Philadelphia Police had neither reasonable suspicion nor probable cause to stop and search Appellant Erich Moritz, as well as his automobile, and seize physical evidence, specifically crack cocaine and $2,167.00 in United States currency?

Appellant's Brief, at 2.

When a suppression court's finding of facts are supported by the record, an appellate court will reverse only if there is an error in the legal conclusions drawn from those findings. ***Commonwealth v. Hill***, 874 A.2d 1214, 1216 (Pa. Super. 2005).  The appellate court is thus bound by the lower court's factual findings at the suppression hearing. ***Commonwealth v. McClease***, 750 A.2d 320, 323-34 (Pa. Super. 2000).

Probable cause "must be based on the totality of the circumstances." ***Commonwealth v. Wells***, 916 A.2d 1192, 1195 (Pa. Super. 2007).  This Court has set forth relevant factors in determining whether probable cause to arrest a defendant for drug dealing exists.  These include the time of the drug sale, whether the location is established as one where drug-related activity normally transpires, and the specific experience that the police

*(Footnote Continued)* ———————————

[2] 18 Pa.C.S. § 7512(a).

[3] 35 P.S. § 780-113(a)(16).

- 3 -

officer has in observing narcotics trafficking. ***Commonwealth v. Williams***, 2 A.3d 611, 616 (Pa. Super. 2010).

Probable cause justifying an arrest exists when there are sufficient facts and circumstances to make a reasonable, cautious police officer believe that the suspect has committed or is committing a crime. ***Wells***, 916 A.2d at 1195. "A police officer's experience may be fairly regarded as a relevant factor in determining probable cause." ***Commonwealth v. Thompson***, 985 A.2d 928, 936 (Pa. 2009). However, the officers involved must establish a nexus between their experience and the observations they make. ***Id.*** at 935.

In ***Thompson***, the Supreme Court noted that in reviewing a determination of probable cause, it relied "on the fact that the transaction at issue occurred in the nighttime hours, on a street, in a neighborhood the police department selected for the 'Operation Safe Street' program." ***Id.*** at 936-37. Here, the transaction between Moritz and Burke began at 10:00 p.m. in the parking lot of a 7-11 located within an area that was the subject of numerous drug-related complaints. The sale was later completed in an alleyway, after which Moritz returned to the 7-11. The timing and location of the sale indicate that a narcotics transaction was taking place. Additionally, the police officers involved had experience with numerous narcotics cases. Officer Wade had been a Philadelphia Police Officer for approximately seventeen years, one and one-half of which had been as a

member of the 15th District Narcotics Enforcement Team (NETS), and had conducted approximately twenty narcotics arrests in the few blocks surrounding the 7-11. Officer Burgoon had been a Philadelphia Police Officer for ten years, with one year on the NETS team. He testified that he had seen narcotics transactions similar to the interaction between Moritz and Burke hundreds of times.

Here, while Mortiz was in his car, Officer Wade overheard him say on his cell phone, "how many do you want?" N.T. Suppression Hearing and Trial, 5/26/15, at 8. Officer Wade testified that over his career he had heard this phrase used twenty to twenty-five prior times in relation to a sale of narcotics. *Id.* at 9-10. Accordingly, Officer Wade established a connection between his experience "and the issue at hand." ***Thompson***, ***supra*** at 935. Officer Wade further noted that immediately after Moritz uttered this phrase, he drove his car out of the parking lot. N.T. Suppression Hearing and Trial, ***supra*** at 10. Officer Burgoon then witnessed an interaction between Moritz and Burke that was similar if not identical to hundreds of other narcotics sales the officer had seen. Finally, Officer Apostolou found a bag of crack cocaine on Burke's person moments after the transaction had been consummated. Given the totality of the circumstances along with the officers' knowledge of narcotics trafficking, the trial court properly concluded that probable cause for Moritz's arrest existed.

Moritz also contends that the warrantless search of his automobile incident to his arrest was illegal. This argument similarly fails. "The prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required." *Commonwealth v. Gary*, 91 A.3d 102, 138 (Pa. 2014). Officer Wade had heard Moritz arrange the sale with Burke while talking on a mobile device in his automobile, and Officer Burgoon witnessed the exchange occur through the front window of the vehicle. Thus, probable cause existed to believe that the automobile either contained more narcotics, or at a minimum, contained the illegal proceeds from the recently completed sale to Burke.

Moritz further argues that the court should have suppressed the narcotics and the money that were found inside a silver box inside the vehicle. However, where there is probable cause to search a vehicle for contraband, officers may search any containers found therein where contraband could be concealed. *In re I.M.S.*, 124 A.3d 311, 316 (Pa. Super. 2015). Therefore, because the officers had the right to search the car, the evidence found in the silver box was legally seized.

Moritz has failed to show that the police lacked probable cause to search his person and automobile. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/8/2016